UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>        v.<br><br>OERLIKON METCO (US) INC., F/K/A SULZER<br>METCO (US) INC., A DELAWARE CORPORATION,<br><br>                              Defendant. | **Case No:** 1:23-cv-9680<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), by its attorneys, Mendes & Mount LLP, for its Complaint against Defendant, Oerlikon Metco (US) Inc. f/k/a Sulzer Metco (US) Inc., a Delaware Corporation (hereinafter "OM"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 wherein Liberty Mutual seeks a declaration as to the rights and obligations of the parties under primary and umbrella excess policies (listed on **Exhibit A**) under which OM is seeking coverage in regard to certain pollution remediation and response costs (past, present and future), compensatory and punitive damages, attorney's and expert's fees, and other civil liabilities (including costs and interest) incurred or anticipated to be incurred by OM as the result of two separate lawsuits commenced by the Hicksville Water District ("HWD"). Liberty Mutual also seeks a return of monies paid in connection with a defense that has been provided to OM under a reservation of rights.

2.      Upon information and belief, The Perkin-Elmer Corporation ("Perkin-Elmer") was founded in 1937 and incorporated in 1947; it acquired Metco, Inc. ("Metco"), a leading supplier of plasma and flame spray material and equipment, in September 1971.

3.      On information and belief, Metco remained a division of Perkin-Elmer until 1994 when it was acquired by Sulzer, Inc. and became Sulzer Metco (U.S.) Inc. ("Sulzer Metco"); it was then acquired by the Oerlikon Group and became Oerlikon Metco (US) Inc.

4.      During the time that Metco operated as a division of Perkin-Elmer and during the time that Metco was a named insured under the Policies, Metco allegedly generated, stored, and disposed of toxic contaminants and manufacturing by-products, among them perfluoroctanoic acide ("PFOA"), ammonium perfluorooctanoate ("APFO"), perfluorooctanesulfonic acid ("PFOS"), perfluorohexane sulfonic acid ("PFHxS"), perfluorononanoic acid ("PFNA"), perfluoroheptanoic acid ("PFHpA"), perfluorodecanoic acid ("PFDA"), and other similar manufactured compounds (collectively perfluorinated compounds ("PFCs"), as well as 1,1,1-tricholoroethane ("TCA"), trichloroethylene ("TCE"), petrochloroethylene ("PCE), and dichloroethane ("1, 1-DCA"), as part of its routine and ordinary course of business. These practices allegedly resulted in pollution from the two sites at issue, known as 1101 Prospect Avenue and 325 Duffy Avenue, further identified herein as the ("Sites"). These Sites, operated by Metco, allegedly contaminated the groundwater in, and the wells serving, the HWD. This insurance coverage dispute is related to investigations and remedial efforts imposed by various government agencies and municipalities and demands made and/or lawsuits brought by entities arising from pollution at or emanating from the Sites.

5.      All of the Policies contain terms and conditions that must be satisfied for losses incurred by OM to come within the scope of coverage afforded by the Policies. In addition, the

Policies contain exclusions that bar coverage for certain types of injuries or damage; for example, the Policies exclude coverage for certain injuries or damage resulting from pollution.

6.      Liberty Mutual brings this action for declaratory relief in response to OM's assertion that it is entitled to reimbursement or payment of defense costs and indemnity from Plaintiff in connection with clean-up costs, other remediation costs, fines, equitable relief and other losses incurred or anticipated to be incurred by OM in connection with federal, state and local claims regarding the damage caused by pollution and contaminants at or emanating from the Sites. In addition, OM has asserted that it is entitled to coverage from Plaintiff in connection with lawsuits that allege, *inter alia*, that pollution from the Sites has contaminated the soil and local water supply at or near the Sites, and specifically the groundwater in, and the wells serving, the HWD.

7.      Coverage for the Sites is precluded because OM's losses fall within express exclusions in the Policies.

8.      Coverage for the Sites is also unavailable in whole or in part because OM has failed to satisfy its obligations under or the conditions contained in the Policies.

## PARTIES

9.      Plaintiff Liberty Mutual is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. At all relevant times, Liberty Mutual was authorized and did transact business in the State of New York.  Liberty Mutual issued CGL policies to Perkin-Elmer under which defendant OM has sought coverage.

10.     Upon information and belief, Defendant OM is a corporation organized under the laws of the State of Delaware, with its current principal place of business located in Westbury,

New York. OM is authorized to do business in New York and has a registered agent address of 80 State Street, Albany, New York. The insurance policies that are the subject of this action were issued and delivered to Perkin-Elmer with an address in New York, and specifically the following addresses: 88 Pine Street, New York, 10005; Wall Street Plaza, New York, 10005 and 110 William Street, New York, New York 10038. OM is authorized to and does business in New York.

11.     The claims against OM arising from Metco's operations at the Sites are collectively the "Underlying Pollution Claims." HWD 1 and HWD 2 are collectively referred to as the "Underlying Pollution Suits."

## JURISDICTION AND VENUE

12.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a) (1) because Plaintiff and Defendant OM are citizens of different states and the amount in controversy exceeds $75,000.

13.     Venue in this Court is proper under 28 U.S.C. §1391 as the subject policies of insurance under which OM seeks coverage, were secured by Perkin-Elmer through its insurance agents located in New York, New York. The parties' rights and responsibilities, pursuant to these insurance policies and to be decided by this Court, are governed by, and will be decided in accordance with New York law.

## GENERAL ALLEGATIONS

### A.  The Insurance Relationship

14.     Liberty Mutual issued Comprehensive General Liability and Commercial General Liability ("CGL") policies to Perkin-Elmer for successive periods from March 28, 1971 to February 1, 1991.  Metco was first added as a named insured on the CGL policy that incepted on

4

March 28, 1971 effective as of January 1, 1972, and ceased being a named insured on CGL policies beginning with the CGL policy first incepting August 1, 1985. Moreover, the CGL policy effective August 1, 1985 contains Amendatory Endorsement number 62 which eliminates Metco as a named insured effective August 1, 1985. Therefore, coverage is only potentially available, if at all, to OM under the CGL policies issued to Perkin-Elmer effective January 1, 1972 to August 1, 1985.

15.    From May 1, 1971 to November 1, 1974 and again from February 1, 1985 to February 1, 1991, Liberty Mutual issued to Perkin-Elmer Umbrella Excess Liability ("UEL") policies. Metco was added as a  named insured  to the UEL policy that incepts on May 1, 1971, effective as of October 1, 1971, which was subsequent to its acquisition by Perkin-Elmer in September 1971.  That policy was cancelled November 1, 1974.  Metco is a specific named insured under the UEL policies in effect from February 1, 1985 to February 1, 1987. Metco Ltd. was thereafter added as a specific named insured on the UEL policy pursuant to Endorsement 10, incepting February 1, 1990, effective May 17, 1990, until the termination of the policy on February 1, 1991.

16.    A schedule of the CGL and UEL policies issued to Perkin-Elmer that are at issue in this action is attached as **Exhibit A** and made a part hereof (the "Policies").

17.    OM alleges it is entitled to coverage under policies issued to Perkin-Elmer that insured Metco.

### B.  Policy Provisions

18.    The Policies contain terms, conditions and exclusions that are fully set forth in the Policies and which must be satisfied for losses incurred to come within the scope of coverage and for any entitlement to defense.

19.     Notwithstanding the generality of the foregoing, Liberty Mutual specifically identified to OM the following provisions, set forth below in paragraphs 21 and 22  that exclude coverage for the contamination at and/or allegedly attributable to the Sites.

20.     Despite Metco not being a specific named insured on the CGL policies incepting after August 1, 1985, the CGL policies in effect from March 28, 1971 to February 1, 1987 and the UEL policies in effect from May 1, 1971 to November 1, 1974 and from February 1, 1985 to February 1, 1986 contain the following exclusionary language which provides that the policies do not apply to:

> to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is both sudden and accidental;

21.     The CGL policies in effect subsequent to February 1, 1987 and those UEL policies in effect commencing February 1, 1986 all contain an absolute pollution exclusion which states, in the same or substantially similar language as follows:

> It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:
>
> > 1.     To personal or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
> >
> > > a.     at or from premises owned, rented or occupied by the named Insured;
> > >
> > > b.     at or from any site or location used by or for the named insured or others for the handling,

storage, disposal, processing or treatment of waste;

c.    which are at any time stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

d.    at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations;

(i)    If the pollutants are brought on or to the site or location in connection with such operations; or

(ii)    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

2.    To any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

22.    Liberty Mutual has also identified to OM various additional specific terms, conditions and exclusions which may limit and/or bar coverage for the Underlying Pollution Claims and Underlying Pollution Suits. Samples of such other terms, conditions and exclusions are set out in part in **Exhibit B**.

## THE SITES AND UNDERLYING LAWSUITS

### A. HWD 1

23.     On or about July 31, 2020, the Hicksville Water District amended its Complaint in an action captioned *Hicksville Water District v. Jerry Spiegel Associates, Inc. et al.*, Civ. No. 19-cv-06070-PKC-SMG ("HWD 1"), pending in the United States District Court for the Eastern District of New York, adding OM as a party, and alleging that OM is responsible under CERCLA for the contamination of groundwater and wells caused by historic operations at two sites which had been or were owned and/or operated by Metco or its purported predecessors: the 1101 Prospect Avenue Site in Westbury, New York ("1101 Prospect Avenue Site", also known as the "Sulzer Metco Site"), and the 325 Duffy Avenue Site in Hicksville, New York (the "325 Duffy Avenue Site", also known as the "Metco Site").

24.     By letter dated October 28, 2020, Liberty Mutual agreed to participate in the defense of to OM for HWD 1 under certain CGL policies, subject to a full reservation of rights. In particular, Liberty Mutual reserved its rights to deny coverage and to contest coverage in a declaratory judgment action. Liberty Mutual specifically reserved the right to withdraw from the defense of the HWD 1 action should it subsequently be determined that there was no obligation to defend and, in that event, to seek reimbursement of any defense costs expended on behalf of OM.

25.     Liberty Mutual informed OM that there was no coverage available to OM under any CGL policies that did not list Metco as a specific named insured during the effective dates of the certain CGL policies. No position was taken on any UEL policy as OM had not established that those policies were implicated at that time.

26.     By letter dated June 16, 2023, OM informed Liberty Mutual of its belief that the UEL policies were implicated by virtue of a settlement demand made by the Hicksville Water District in HWD 1, and that OM expected Liberty Mutual to attend an upcoming mediation and to participate as both primary and excess insurer.

27.     By letter dated October 11, 2023, Liberty Mutual disclaimed coverage for the settlement demand and any other indemnification obligation with regard to the claims that are the subject of the HWD 1 action under both the CGL and UEL policies on the basis of the sudden and accidental and absolute pollution exclusions contained in the policies. Liberty Mutual also disclaimed as to any policy that did not list Metco as a specific named insured. Rights were reserved to disclaim on other enumerated grounds as well. Liberty Mutual has and shall continue to provide a defense of the HWD 1 lawsuit under a full Reservation of Rights until this action is decided by this Court.

### 1.  1101 Prospect Avenue

28.     The HWD 1 Amended Complaint alleges that OM is the current owner and operator of the property at 1101 Prospect Avenue, Westbury, New York, also known as the Sulzer Metco site.

29.     OM is alleged to be the successor to several related entities that operated at the property, including Sulzer Metco, which is a State Superfund site.

30.     OM's alleged predecessor, Sulzer Metco, is alleged, on information and belief, to have manufactured metallic and ceramic powders for use in the thermal spray coating industry, as well as thermal spray guns and parts. Site operations are also alleged to have included wedging (compression and stretching of wire that has been filled with metal powder), and blending of metallic or ceramic powder with a lacquer and glue.

31.     Sulzer Metco is alleged to have used industrial solvents as degreasers in its operations at the site. The primary solvents were PCE, TCE, 1,1-DCA and TCA. It is alleged that spent solvents were disposed into floor drains to on-site subsurface discharge points.

32.     Groundwater is alleged to be contaminated with PCE, TCE, manganese, iron, and sodium, and that the toxic and hazardous substances released at the 1101 Prospect Avenue site contained 1,4-Dioxane. These substances purportedly infiltrated the groundwater, which migrated off-site allegedly contaminating the Hicksville Water District's drinking water supply.

### 2. 325 Duffy Avenue

33.     OM is alleged to have operated at 325 Duffy Avenue, Hicksville, NY, also known as the Metco site, and that it is liable for the actions, omissions and operations at this property, which is a State Superfund site.

34.   Based upon information and belief, OM first acquired the 325 Duffy Avenue site on or about in 1979.

35.     The site was used for the manufacturing of various machine parts and the performing of equipment testing, which included testing by flame spraying, with the use of spraying powders, and that it conducted light manufacturing and metal working, machining, and metal finishing (including a vapor degreaser).

36.     From 1979 to approximately 1995, Metco set up and operated a machine shop on the Site and did testing of new equipment by flame spraying (a process as in which metals are melted and sprayed on a surface to form a coating) until about April 1999.

37.     From 1987 through August 1997, the Site was registered as a Toxic or Hazardous Material Storage Facility for Bulk and Container Storage and also as a Solid Waste Management

10

Facility. During this time, waste from a Metco facility on Miller Place in Hicksville was brought to the Site, where it was staged for disposal by a licensed Hauler.

38.     Groundwater at the site was allegedly found to be contaminated with multiple metals and volatile organic compounds ("VOCs"), including TCA. Detectible concentrations of 1,4-Dioxane were reported in monitoring wells at the site.

39.     The hazardous and toxic substances released at the above property allegedly contained 1,4-Dioxane; these toxic and hazardous substances infiltrated the groundwater, which purportedly migrated off-site, allegedly contaminating the Hicksville Water District's wells and water supply with 1,4-Dioxane.

**B. HWD 2**

40.     On or about June 30, 2023, the Hicksville Water District commenced an action captioned *Hicksville Water District v. ALSY Manufacturing, Inc., et al.,* against OM and other defendants in the Supreme Court of the State of New York, County of Nassau, Index Number 610414/2023 ("HWD 2"). As to OM, the suit alleges that OM is responsible for the contamination of groundwater and wells with PFCs caused by historic operations at the 1101 Prospect Avenue Site and the 325 Duffy Avenue Site.

41.     On or about July 20, 2023, OM wrote to Liberty Mutual and tendered HWD 2 to Liberty Mutual for defense and indemnification under unspecified policies issued to Perkin-Elmer by Liberty Mutual.

42.     On or about August 25, 2023, Liberty Mutual responded to the July 20 letter and disclaimed coverage as to HWD 2 under all CGL and UEL policies on the basis of both the sudden and accidental pollution exclusion and also the absolute pollution exclusion contained in

the policies. Liberty Mutual also disclaimed coverage as to any Policy that did not list Metco as a specific named insured. Rights were reserved to disclaim on other enumerated grounds as well.

### 1.  1101 Prospect Avenue

43.    The HWD 2 Complaint alleges that OM is the current owner and operator of the property at 1101 Prospect Avenue, Westbury, New York, also known as the Sulzer Metco site.

44.    OM is alleged to be the successor to several related entities that operated at the property, including Sulzer Metco, which is a State Superfund site.

45.    OM's alleged predecessor, Sulzer Metco, is alleged, on information and belief, to have manufactured metallic and ceramic powders for use in the thermal spray coating industry, as well as thermal spray guns and parts. Site operations are also alleged to have included wedging (compression and stretching of wire that has been filled with metal powder), and blending of metallic or ceramic powder with a lacquer and glue. It is alleged that waste by-products were disposed into floor drains to on-site subsurface discharge points.

46.    Sulzer Metco is alleged to have used PFCs containing products as part of the thermal spraying process conducted at the site. The hazardous and toxic substances allegedly released at the property contained PFCs and other toxic chemicals. It is further alleged that these chemicals infiltrated the groundwater, which migrated off-site, allegedly contaminating the Hicksville Water District's wells and drinking water supply with hazardous substances, including but not limited to PFCs and other toxic chemicals.

### 2. 325 Duffy Avenue

47.    OM is alleged to have operated at 325 Duffy Avenue, Hicksville, NY, also known as the Metco site, and that it is liable for the actions, omissions and operations at this property, which is a State Superfund site.

48.    The site was used for the manufacturing of various machine parts and the performing of equipment testing, which included testing by flame spraying, with the use of spraying powders, and that it conducted light manufacturing and metal working, machining, and metal finishing (including a vapor degreaser).

49.    Groundwater at the site was allegedly found to be contaminated with multiple contaminants. Detectible concentrations of PFCs and other toxic chemicals were reported in monitoring wells at the site.

50.    It is alleged, on information and belief, that Sulzer Metco also used PFCs as part of the thermal spraying process conducted at the site.

51.    It is alleged that the hazardous and toxic substances released at the above property contained PFCs and other toxic chemicals. They infiltrated the groundwater, which migrated off-site, contaminating Plaintiff's drinking water supply with PFCs.

## FIRST CAUSE OF ACTION

### (Declaration of No Coverage Under the Pollution Exclusions)

52.    Plaintiff incorporates, as if fully set forth at length herein, the allegations contained in paragraphs 1-51 above.

53.    The underlying lawsuits and claims involving the Sites are barred by the terms of the pollution exclusion contained in certain of the policies, and do not fall within any exception to the exclusion;

54.    An actual and justiciable controversy exists between Liberty Mutual and OM as to the parties' respective rights and obligations under the Policies.

55.    Liberty Mutual has no adequate remedy at law.

56.     Accordingly, Liberty Mutual is entitled to a declaration that it has no obligation to indemnify or defend OM in connection with any claims for property damage or personal injury or bodily injury alleged in the Underlying Pollution Claims or Underlying Pollution Suits.

## SECOND CAUSE OF ACTION

**(Declaration of No Coverage Duty to Indemnify- Alternate Grounds)**

57.     Plaintiff incorporates, as if fully set forth at length herein, the allegations contained in paragraphs 1-56 above.

58.     The Policies contain various terms, conditions, and definitions which OM must satisfy or otherwise must be satisfied for the losses and expenses OM has incurred and will in the future incur in connection with the Underlying Pollution Claims and Underlying Pollution Suits to be covered under the Policies. In addition, the Policies contain certain exclusions which bar coverage for some or all of the injuries or damage in the Underlying Pollution Claims and Underlying Pollution Suits.

59.     OM is unable to establish coverage or is otherwise precluded for the injuries or damage arising from the Underlying Pollution Claims or Underlying Pollution Suits including, but not limited to, the following reasons

a) To the extent that any relief sought is equitable in nature or otherwise does not constitute "damages" within the meaning of the Liberty Mutual Insurance policies, there is no coverage thereunder;

b) There is no coverage under the Liberty Mutual Insurance policies for costs incurred solely to comply with statutes and regulations governing the insured's business operations;

c) To the extent that any harm alleged does not constitute "bodily injury," "personal injury" and/ or "property damage" as those terms are defined in the Liberty Mutual Insurance policies, there is no coverage thereunder;

d) There is no coverage under the Liberty Mutual Insurance policies for bodily injury, personal injury and /or property damage which was not caused by an "occurrence" as that term is defined therein and/ or "accident" within the meaning thereof;

e) There is no coverage under the Liberty Mutual Insurance policies for bodily injury, personal injury and/ or property damage which did not occur during the policy periods thereof as required by such policies;

f) There is no coverage under the Liberty Mutual Insurance policies for bodily injury, personal injury and/ or property damage which was expected or intended from the standpoint of the insured within the meaning of such policies;

g) There is no coverage under the Liberty Mutual Insurance policies for property damage to property owned by, rented to, occupied by, sold by, given away by, or abandoned by the insured or property in the care, custody or control of the insured within the meaning of such policies;

h) There is no coverage under the Liberty Mutual Insurance policies for property damage to that particular part of real property on which the insured or any contractors or subcontractors working directly on behalf thereof are performing operations, if the property damage arose out of those operations, within the meaning of such policies;

i) To the extent that an insured failed to notify Liberty Mutual Insurance of an occurrence, accident, suit and/ or claim as required by the Liberty Mutual Insurance

policies, or otherwise failed to comply with all of the provisions (including conditions) and other prerequisites to coverage thereunder, coverage  under such policies may thereby be precluded;

j)  There is no coverage under the Liberty Mutual Insurance policies for costs and expenses or other obligations assumed by any insured without notice to and the consent of Liberty Mutual Insurance;

k)  There is no coverage under the Liberty Mutual Insurance policies for losses which were known or should have been known to an insured prior to any policy period thereof;

l)  To the extent that the Defendant/Third-Party Plaintiffs seek damages for trespass, be advised that there may be no coverage for trespass because a trespass claim may not fall within the definition of "personal injury";

m)  To the extent precluded by the terms of the Liberty Mutual Insurance policies and/ or public policy, there is no coverage for any punitive, exemplary or like damages that may be assessed against any insured;

n)  To the extent that coverage might otherwise exist, Liberty Mutual Insurance's obligations under its policies are limited by the "other insurance" condition, any deductible, any per occurrence, per person, or aggregate  limits of liability therein, and any policy provisions precluding the stacking or accumulation of the limits  of liability of multiple policies.

60.    An actual and justiciable controversy exists between Liberty Mutual and OM as to the parties' respective rights and obligations under the Policies.

61.    Liberty Mutual has no adequate remedy at law.

62.    Accordingly, Liberty Mutual is entitled to a declaration that it has no obligation to indemnify OM in connection with any claims for property damage or personal injury or bodily injury alleged in the Underlying Pollution Claims or Underlying Pollution Suits.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment-No Duty to Defend – Alternate Grounds)

63.    Plaintiff incorporates, as if fully set forth at length herein, the allegations contained in paragraphs 1-62.

64.    The Policies contain various terms, conditions, and definitions which OM must satisfy or otherwise must be satisfied for the losses and expenses OM has incurred and will in the future incur in connection with the Underlying Pollution Claims and Underlying Pollution Suits to be covered under the Policies and for Liberty Mutual to have a duty to defend OM in connection therewith.. In addition, the Policies contain certain exclusions which preclude any duty to defend OM against some or all of the injuries or damage in the Underlying Pollution Claims and Underlying Pollution Suits.

65.    OM is unable to establish coverage or is otherwise precluded for the injuries or damage arising from the Underlying Pollution Claims or Underlying Pollution Suits including, but not limited to, the following reasons:

    a)    To the extent that any relief sought is equitable in nature or otherwise does not constitute "damages" within the meaning of the Liberty Mutual Insurance policies, there is no coverage thereunder;

b) There is no coverage under the Liberty Mutual Insurance policies for costs incurred solely to comply with statutes and regulations governing the insured's business operations;

c) To the extent that any harm alleged does not constitute "bodily injury," "personal injury" and/ or "property damage" as those terms are defined in the Liberty Mutual Insurance policies, there is no coverage thereunder;

d) There is no coverage  under the Liberty Mutual Insurance policies for bodily injury, personal injury and /or property damage which was not  caused by an "occurrence" as that term is defined  therein and/ or "accident" within the meaning thereof;

e) There is no coverage under the Liberty Mutual Insurance policies for bodily injury, personal injury and/ or property damage which did not occur during the policy periods thereof as required by such policies;

f) There is no coverage under the Liberty Mutual Insurance policies for bodily injury, personal injury and/ or property damage which was expected or intended from the standpoint of the insured within the meaning of such policies;

g) There is no coverage under  the Liberty Mutual Insurance policies for property damage to property owned  by, rented  to, occupied by, sold by, given away by, or abandoned by the insured or property in the care, custody or control of the insured within  the meaning of such policies;

h) There is no coverage under the Liberty Mutual Insurance policies for property damage to that particular part of real property on which the insured or any

contractors or subcontractors working  directly on behalf  thereof  are performing operations, if the property damage arose out of those operations, within  the meaning of such policies;

i)  To the extent that an insured failed to notify Liberty Mutual Insurance of an occurrence, accident, suit and/ or claim as required by the Liberty Mutual Insurance policies, or otherwise failed to comply with all of the provisions (including conditions) and other prerequisites to coverage thereunder, coverage  under such policies may thereby be precluded;

j)  There is no coverage under the Liberty Mutual Insurance policies for costs and expenses or other obligations assumed by any insured without notice to and the consent of Liberty Mutual Insurance;

k)  There is no coverage under the Liberty Mutual Insurance policies for losses which were known or should have been known to an insured prior to any policy period thereof;

l)  To the extent that the Defendant/Third-Party Plaintiffs seek damages for trespass, be advised that there may be no coverage for trespass because a trespass claim may not fall within the definition of "personal injury";

m) To the extent precluded by the terms of the Liberty Mutual Insurance policies and/ or public policy, there is no coverage for any punitive, exemplary or like damages that may be assessed against any insured;

n)  To the extent that coverage might otherwise exist, Liberty Mutual Insurance's obligations under its policies are limited by the "other insurance" condition, any deductible, any per occurrence, per person, or aggregate  limits of liability

therein, and any policy provisions precluding the stacking or accumulation of the limits of liability of multiple policies.

66.     An actual and justiciable controversy exists between Liberty Mutual and OM as to the parties' respective rights and obligations under the Policies.

67.     Liberty Mutual has no adequate remedy at law.

68.     Accordingly, Liberty Mutual is entitled to a declaration that it has no obligation to defend OM in connection with any claims for property damage or personal injury or bodily injury alleged in the Underlying Pollution Claims or Underlying Pollution Suits.

## FOURTH CAUSE OF ACTION

### (Repayment of Defense Costs)

69.     Plaintiff incorporates, as if fully set forth at length herein, the allegations contained in paragraphs 1-68.

70.     Liberty Mutual has paid to OM, or to OM's attorneys, defense costs to defend OM in HWD 1 under the CGL Policies in excess of $100,000.

71.     At all times, Liberty Mutual reserved the right to seek repayment of these costs under the CGL Policies.

72.     Accordingly, to the extent this Court declares that HWD 1 is not covered under the CGL Policies; Liberty Mutual now seeks an order requiring OM to repay, as damages, the costs advanced by Liberty Mutual for those claims.

## FIFTH CAUSE OF ACTION

### (Allocation)

73.     Plaintiff incorporates, as if fully set forth at length herein, the allegations contained in paragraphs 1-72.

74.     Upon information and belief, the alleged injuries or damage which OM claims coverage from Liberty Mutual took place, in whole or part, before the time that Perkin-Elmer was insured by Liberty Mutual, or before the time that Perkin-Elmer acquired Metco or before the time that Metco owned or operated the Sites. In addition, on information and belief, some or all of the alleged injuries or damage which OM claims coverage from Liberty Mutual took place after the time Metco was insured by Liberty Mutual.

75.     To the extent that Liberty Mutual has any duties or obligations under the Policies, Liberty Mutual seeks an order that it is only obligated to pay its appropriate pro-rata allocable share of any defense costs or indemnity under the policies.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff requests that the Court grant the following relief:

(a)  On the First Cause of Action, an order declaring that Liberty Mutual is not obligated to defend or indemnify OM for claims relating to the Sites or the underlying lawsuits because those claims are barred by the pollution exclusions contained in the Policies;

(b) On the Second  Cause of Action, an order declaring that Liberty Mutual is not obligated to indemnify OM for any of the Underlying Pollution Claims and Underlying Pollution Suits;

(c) On the Third  Cause of Action, an order declaring that Liberty Mutual is not obligated to

defend OM in any of the Underlying Pollution Claims and Underlying Pollution Suits;

(d) On the Fourth  Cause of Action, an order requiring OM to pay damages amounting to the

total defense costs paid by Liberty Mutual for claims that are not covered by the CGL

policies;

(e ) On the Fifth Cause of Action, declaring that Liberty Mutual is not obligated to pay any

portion of defense or indemnity costs that are not properly allocated to its policy periods;

(f) Any such further relief that the Court deems just and proper.

Date: New York, New York
       November 2, 2023

Respectfully submitted,

**MENDES & MOUNT LLP**

By: _____

Eileen T. McCabe, Esq. (0875)
John Falcone, Esq. (7007)
Stephen P. Bona, Esq. (9139)
750 Seventh Avenue
New York, New York 10019
T: (212) 261-8000
F: (212) 261-8750
eileen.mccabe@mendes.com
john.falcone@mendes.com
stephen.bona@mendes.com

*Attorneys for Plaintiff*